HARRAL et ux. v. UNITED STATES.

Civ. A. No. 628.

United States District Court
W. D. Texas, El Paso Division.

Jan. 26, 1949.

Muckleroy McDonnold, Edward J. Vance, and Birkhead, Beckmann, Stanard, Vance & Wood, all of San Antonio, Tex., for plaintiffs.

H. W. Moursund, U. S. Atty., of San Antonio, Tex., and Frank H. Hunter, Asst. U. S. Atty., of El Paso, Tex., for defendant.

THOMASON, District Judge.

Findings of fact and conclusions of law in this case are as follows:

### Findings of Fact.

1. That plaintiffs, Arthur G. Harral and Carolyn H. Harral are husband and wife and resident citizens of the United States, residing in Pecos County, Texas, in the El Paso Division of the United States District Court for the Western District of Texas at all times herein mentioned.

2. On or about March 15, 1942, the plaintiffs duly filed in the office of the Collector of Internal Revenue, Second District of Texas, at Dallas, their separate income tax returns upon form No. 1040, covering the calendar year 1941.

3. In said returns each of the plaintiffs claimed as a deduction the sum of $25,000.-00, representing a claimed loss on their investment of 2500 shares of the capital stock of Dixie Cultivator Corporation as a long term capital loss on the ground that the stock of said corporation became worthless during the calendar year 1941.

4. That the 2500 shares of stock were acquired during the marriage of plaintiffs in several blocks in the years 1928 and 1929, at a cost of $20 per share, aggregating $50,-000, and that said stock was acquired with community funds and paid for in cash.

That the plaintiffs owned said shares of stock continuously from the date of its acquisition up to and including the time of the trial of this case.

5. That the Commissioner of Internal Revenue disallowed the loss claimed by each of the plaintiffs on the ground that the stock became worthless prior to the year 1941.

6. That the Commissioner of Internal Revenue assessed an additional tax for the calendar year 1941 against the plaintiffs, Arthur G. Harral and Carolyn H. Harral, each in the amount of $2989.53, with interest thereon each in the amount of $484.21.

7. That on November 27, 1944, plaintiffs each paid the additional tax assessed against each of them in the amount of $2989.53 and interest in the amount of $484.21, to W. A. Thomas, Collector of Internal Revenue for the Second District of Texas.

8. That on or about November 15, 1945, each of the plaintiffs filed with the Collector of Internal Revenue a separate claim for refund for the year 1941, each claim being in the amount of $3467.85, and each plaintiff claiming in their claim so filed that the assessment made by the Collector of Internal Revenue resulted from the disallowance of the losses claimed by plaintiffs by reason of the worthlessness of the stock of Dixie Cultivator Corporation, which plaintiffs claimed became worthless in 1941.

9. That the Commissioner of Internal Revenue failed to act upon the claims filed by each of the plaintiffs for refund on the additional assessment paid by them of additional income taxes and interest in the year 1941, each in the amount of $3467.85.

10. That each of the plaintiffs filed a bill of complaint against the United States with the Clerk of the District Court of the United States for the Western District of Texas, El Paso Division, on the 26th day of July, 1946.

11. W. A. Thomas, Collector of Internal Revenue for the Second District of Texas at Dallas, died on or about January 29, 1946.

12. Plaintiffs were never compensated for the loss which they sustained on their

stock investment in the Dixie Cultivator Corporation by insurance or otherwise.

13. The Dixie Machinery Company was incorporated under the laws of the State of Delaware in 1926, and its name was subsequently changed by corporate amendment to its charter to the Dixie Cultivator Corporation. In 1926 it acquired a plant site in San Antonio, consisting of land, buildings and machinery, and its principal business was the manufacture and sale of cotton choppers. It developed patents on a cotton chopper and from 1926 until about March 15, 1941, it was engaged in manufacturing and selling cotton choppers. Some time in the year 1929 Dixie Cultivator Corporation sold its land and buildings in San Antonio and moved to Dallas, Texas, and there purchased lands and buildings and continued to operate in Dallas County, Texas, with the exception of a short period of time in 1939, until it lost all of its assets through foreclosure and sheriff's sale on or about April 1, 1941.

14. The management of the Dixie Cultivator Corporation was in the hands of one L. W. Leeper up until about November 15, 1939. On November 15, 1939, the corporation was indebted to John and Clarence Scharbauer and Dr. John B. Thomas, stockholders, in the principal sum of approximately $150,000, for money advanced from time to time, to pay charges and expenses in the development of the patents and operation of the business; that at such time said stockholders threatened to have a receiver appointed for the business until L. W. Leeper relinquished the control and management of the corporation to said stockholders. On or about November 15, 1939, the said L. W. Leeper gave up control and management of the corporation and said stockholders employed Marion Flynt, of Midland, Texas, to take charge of and manage the corporation. The corporation was inactive from about the 15th of November, 1939, until about January 15, 1940. Under the management of Marion Flynt the corporation started a sales campaign for .the sale of certain cotton choppers and cultivators on hand. In the year 1940 it did considerable advertising and held demonstrations in Texas and oth-

er States, demonstrating the cotton chopper to cotton farmers. When Marion Flynt took charge of the corporation John and Clarence Scharbauer and Dr. John B. Thomas, all of whom were men of wealth, assured him that they would make available to the corporation such sums of money as he thought necessary in trying to make a go of the business, and from July, 1940 to February, 1941, said stockholders advanced to the corporation about $35,000. The sales campaign and demonstrations in the year 1940 were not successful because that season was a rainy one and many of the demonstrations were rained out. At the time Marion Flynt took charge of the business there was in excess of 1000 unassembled cotton choppers on hand. During his operation of the business he assembled and sold a considerable number of them.

15. That the Dixie Cultivator Corporation never paid a dividend or made a profit from its inception to its dissolution.

16. At the meeting of the Board of Directors of the corporation held in Dallas at the office of the Company in the summer of 1940, there were present, the directors, Messrs. John and Clarence Scharbauer, Dr. John B. Thomas, Haynie E. Edwards, L. W. Leeper, the plaintiff Arthur Harral, and the manager, Mr. Marion Flynt. At the meeting the president, John Scharbauer, reported that the prospects looked favorable for the company being able to make a go of the business and that the corporation would soon be able to liquidate the indebtedness held by the Scharbauers and Dr. Thomas, and further, that it appeared that the corporation would eventually be able to get on its feet and the stockholders would eventually find themselves with a nice investment.

17. The Scharbauers and Dr. John B. Thomas took judgment against the Dixie Cultivator Corporation in February of 1941, and their debt was established in the amount of approximately $200,000 and their lien established and foreclosed against the land, buildings and machinery and all other assets of the corporation. All the assets of the Dixie Cultivator Corporation were sold at sheriff's sale in Dallas County,

Texas, in March and April of 1941, for approximately $25,000, leaving a deficiency judgment of about $175,000.

18. At all times prior to the foreclosure sale the corporation was not indebted to anyone other than the stockholders. It owed them approximately $150,000.

19. The stock of the Dixie Cultivator Corporation had some value in the year 1940, and in the year 1941, up until March and/or April of said year when all of its assets were sold at sheriff's sale under the aforesaid judgment foreclosure.

20. Upon the foregoing facts and upon the whole record, I find as an ultimate fact that the sale of all the corporate assets of Dixie Cultivator Corporation under the judgment foreclosure at sheriff's sale in March and April, 1941, was the identifiable event in establishing 1941 the year of the worthlessness of the stock of Dixie Cultivator Corporation.

### Conclusions of Law.

1. That the plaintiffs have sustained the burden of proof imposed upon them by the adverse ruling of the Commissioner of Internal Revenue.

2. The plaintiffs' loss with respect to their stock in Dixie Cultivator Corporation within the meaning of Sec. 23(e), Internal Revenue Code, Title 26 U.S.C.A. was sustained in the calendar year 1941.

3. That plaintiffs' stock was community property under the laws of Texas.

4. That plaintiffs, Arthur G. Harral and Carolyn H. Harral are each entitled to recover from the defendant the sum of $3,467.85 with interest thereon from November 27, 1944, at the rate of 6 per cent per annum and their respective costs.

5. That the defendant's motion for judgment should be denied.

### Opinion

The taxpayers deducted 50 per cent of the loss of the worthless stock of the Dixie Cultivator Corporation in their income tax return for the year 1941 under Section 23 (e), Internal Revenue Code, 26 U.S.C.A.

The sole issue in this case is whether or not the stock of Dixie Cultivator Corporation became worthless in the year 1941 and what was the identifiable event in establishing 1941 the year of the worthlessness of said stock. The plaintiffs had invested $50,000 cash in the enterprise and their associates, the Scharbauers and Dr. John B. Thomas, had invested some $175,000 in the company. There were no other stockholders and it was not a promotion or stock selling scheme. All of them acted in good faith and believed there was need for such a machine and that it could be made a success and prove a profitable investment. Both the subjective and objective tests are to be used in determining the year in which a deductible loss is sustained. It is true that in November 1939 the corporation was indebted to its stockholders, officers and directors, John and Clarence Scharbauer and Dr. John B. Thomas, about $150,000. At that time however, the manager, L. W. Leeper, was ousted from control of the company and Marion Flynt was made manager. All of the stockholders then believed that the business could be made a success and from July 1940 to February 1941 the Scharbauers and Dr. Thomas advanced the corporation between $25,000 and $35,000 more money. It was a going concern during said period. No indentifiable event occurred during the period from 1939 to March 1941 to establish the worthlessness of the assets of the corporation. The stock of the corporation had some value in 1940 and in the year 1941, up until March when the assets were sold under foreclosure sale. This was the identifiable event that established the worthlessness of the stock. Boehm v. Commissioner of Internal Revenue, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78, 166 A.L.R. 708; Rassieur v. Commissioner of Internal Revenue, 8 Cir., 129 F.2d 820; Nelson v. United States, 8 Cir., 131 F.2d 301; Byrd v. Commissioner of Internal Revenue, 1931, 21 B.T.A. 1183; Franklin Pioneer Corp. v. Glenn, D.C.1945, 61 F. Supp. 422; Green v. Commissioner of Internal Revenue, 10 Cir., 133 F.2d 76; G. E. Employees Securities Corporation v. Manning, 3 Cir., 137 F.2d 637; Cushman v. Commissioner of Internal Revenue, 13 B.T.A. 41.

Judgment is entered for the plaintiffs.